IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAIN RELIEF NETWORK, on behalf of patients of Dr. Stephen J. Schneider,

Plaintiff,

v.

No. 08-1048-WEB

THE STATE OF KANSAS;
THE KANSAS STATE BOARD OF HEALING ARTS;
MICHAEL MUKASEY, in his official capacity as United States Attorney General;
ERIC F. MELGREN, in his official capacity as the United States Attorney for the District of Kansas; and
THE UNITED STATES DEPARTMENT OF JUSTICE,

Defendants.

**Memorandum and Order**

This matter came before the court on February 29, 2008 for oral argument on the plaintiff's motion for a temporary restraining order. The court orally denied the motion at the February 29 hearing. This written memorandum will supplement the court's oral ruling. This order will also address the recent motions to dismiss filed by the State of Kansas and by the plaintiff Pain Relief Network.

I. *Background*.

This action was filed on February 13, 2008, by the Pain Relief Network ("PRN"), allegedly "on behalf of patients of Dr. Stephen J. Schneider." Doc. 1. On February 22, 2008, plaintiff filed a motion for a temporary restraining order. Doc. 3. The motion asked for a ruling on plaintiff's verified complaint and its request for "declaratory and injunctive relief on an emergency basis." After reviewing the motion, the court noted what appeared to be several obstacles to relief, but it set the matter for a hearing on February 29, 2008, so the State of Kansas

and the United States could be heard on the matter. In the meantime, plaintiff filed an amended complaint on February 27, 2008. On February 28, the State of Kansas and the United States filed briefs in opposition to the request for TRO, arguing that plaintiff lacked standing to seek the relief requested and that, at any rate, pursuant to the *Younger* abstention doctrine the court should deny the requested relief. The State of Kansas further argued it was immune from suit pursuant to the Eleventh Amendment to the U.S. Constitution.[1]

The Amended Verified Complaint[2] states that the action is "brought by the Pain Relief Network, on behalf of patients of Dr. Stephen J. Schneider,..." Doc. 5, ¶ 3. The court takes judicial notice that Dr. Stephen J. Schneider and his wife Linda K. Schneider are charged in a 34-count Indictment with various offenses, including: unlawful distribution and dispensing of controlled substances beyond the bounds of professional medical practice, resulting in the death of numerous individuals, in violation of 18 U.S.C. § 841; knowingly submitting fraudulent claims to Health Care Benefit Programs, in violation of 18 U.S.C. § 1347; money laundering in violation of 18 U.S.C. §§ 1956 and 1957; and a conspiracy to commit the foregoing offenses, in violation of 18 U.S.C. § 371. *See United States v. Schneider*, No. 07-10234 (U.S. Dist. Co., D.

---

[1] In view of the court's ruling below, it need not address the question of Eleventh Amendment immunity of whether plaintiff could re-frame its allegations to meet the exception of *Ex Parte Young*, 209 U.S. 123 (1908). *Cf. Murray v. Colorado*, 149 Fed.Appx. 772 (10th Cir. 2005) ( Eleventh Amendment prohibits suit in federal court against a State or its agency, while *Ex Parte Young* permits prospective injunctive relief against individual state officials in their official capacity).

[2] As the State of Kansas points out, plaintiff neglected to actually verify the complaint filed in this case, although a similar complaint that plaintiff filed in state court, and which was attached to the instant complaint, did contain a verification by plaintiff's counsel.

Kan.).[3]

The Amended Complaint alleges that the Pain Relief Network is a privately funded, non-profit 501(c)(3) corporation, incorporated in the State of New York. The PRN is concerned with civil liberties and with legal and ethical issues raised by application of the Controlled Substances Act to the practice of pain medicine. Doc. 5, ¶7.

According to the complaint, on January 14, 2008, PRN filed an action in the Eighteenth Judicial District, Sedgwick County, Kansas, and sought an *ex parte* temporary restraining order (TRO) to prevent the Kansas Board of Healing Arts from suspending Dr. Schneider's medical license in a summary proceeding before a state Administrative Law Judge. ¶13. The state court refused to hear the application for TRO without the Board of Healing Arts being present. A hearing was scheduled for February 15th, and PRN's counsel allegedly understood the Board of Healing Arts would withdraw its petition to revoke Dr. Schneider's license until after that hearing. The Board did not do so, however, and Dr. Schneider's license was suspended by the state ALJ. On February 1, 2008, PRN sought another TRO from the state court, but again the court refused to hear the matter without the Board being present. *Id*. Plaintiff now contends that Dr. Schneider's license was suspended without due process of law, although the complaint does

---

[3] The Indictment alleges that the Schneiders owned and operated the Schneider Medical Clinic in Haysville, Kansas, for the ostensible purpose of providing pain management treatment for chronic pain patients, but which they in fact allegedly operated as a "pill mill" by unlawfully dispensing controlled substances for other than legitimate medical purposes and beyond the bounds of professional medical practice. The Indictment alleges that 56 clinic patients died of accidental drug overdoses between 2002-2007, with the defendants' unlawful distribution allegedly contributing to 15 of these deaths and directly causing 4 deaths. The Indictment also alleges that on September 13, 2005, federal investigators executed a search warrant at the clinic, and that on or about May 30, 2006, the Kansas Board of Healing Arts filed a petition to revoke Dr. Schneider's medical license.

not make clear in what respect the doctor was deprived of due process.

The Amended Complaint alleges that due to the suspension of Dr. Schneider's license, the Schneider medical clinic was closed, and patients of Dr. Schneider are now "unable to secure appropriate treatment for their pain anywhere in Kansas." ¶6. Plaintiff alleges that "several medically vulnerable people have been hospitalized, their prognoses unknown." ¶ 5. Plaintiff's motion alleges that "a number" of Dr. Schneider's patients "are dying for want of proper medication," and "most have been unable to secure any care by other physicians," while "the treatment of those who have been able to secure care has not met the standard of care to be exercised by physicians who treat patients in chronic and/or severe pain." Doc. 3. ¶4. At the same time, the Amended Complaint alleges that "[m]ost of Dr. Schneider's patients are refusing to go to ER's because of their prior experiences of being 'treated' with contempt and rudeness, as if they were subhuman creatures." Doc. 1, ¶27.

According to plaintiff, the suspension of the doctor's license "served no legitimate governmental interest" and "manifested wanton disregard for pain patients." It calls the Board's decision "absurd" and a "knee-jerk reaction to political pressure...." ¶7. The essence of plaintiff's current request is to "restore the status quo obtaining prior to the AJL's decision" by ordering that Dr. Schneider's license be reinstated. ¶6. This is "eminently reasonable," plaintiff contends, because Dr. Schneider is in custody and thus "there is no danger whatever that Dr. Schneider can practice medicine even with a restored license...." *Id.*

The Amended Complaint alleges federal subject matter jurisdiction is proper under 28 U.S.C. § 1331 and the Fifth and Fourteenth Amendments to the U.S. Constitution. ¶11. PRN claims the Controlled Substance Act is "fatally arbitrary" as applied to pain management

physicians; that the CSA "violates Plaintiff's members' right" of due process under the 5th and 14th Amendments; that the CSA violates their right to equal protection of the law; that it violates their right under the Tenth Amendment to be governed by Kansas law; that it violates their right to be free from cruel and unusual punishment under the 8th and 14th Amendments; that the CSA violates the Americans with Disabilities Act; and that Section 1347 of Title 18 of the United States Code (which prohibits fraud against health care programs) is unconstitutional because it "impermissibly allows federal government intrusion into the physician-patient relationship and matters of medical practice." ¶4.

The PRN seeks a general declaratory judgment that "palliative care (in the form of FDA-approved pharmaceuticals) [is] a fundamental right of patients in severe pain." ¶ 3(A). In order to make that declaration effective, PRN asks the court: to enjoin the Department of Justice from enforcing the CSA throughout Kansas insofar as it applies to DEA-registrants who are licensed medical professionals in Kansas regulated by the Kansas Board of Healing Arts; to order the State of Kansas, through its agency the Board of Healing Arts, to reinstate Dr. Schneider's medical license until such time as the criminal case against him is adjudicated; to order the Board "to affirm that it has no objection to Dr. Joseph M. Sack's taking over the operation and management of the Schneider Clinic"; to appoint a special master to oversee the clinic's finances; to enjoin the Department of Justice from "taking further harassing actions against said clinic" under the operation of Dr. Sack, including the confiscation of patient files or any other actions that impede the clinic's operations; and to order the DOJ to return the originals of all patient files previously confiscated. ¶3.

II. *Discussion.*

A. Standing. Article III of the U.S. Constitution vests "[t]he judicial Power" of the United States in the Supreme Court and such inferior courts as Congress may establish. By contrast, "all legislative Powers" granted by the Constitution are vested in the Congress of the United States, while "[t]he executive Power" is vested in the President.

The question of standing involves whether the litigant who brings an action is entitled to have the court decide the merits of a dispute. Those who seek to invoke the jurisdiction of the federal courts must satisfy Article III standing by alleging an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Determining whether a matter is a proper case or controversy under Article III is particularly important in ensuring that the federal courts respect their properly limited role in a democratic society. *DaimlerChrysler Corp. v. Cuno*, 126 S.Ct. U.S. 1854, 1860 (2006). If the judicial power extended to every *question* under the constitution, it would include virtually every subject proper for legislative decision and executive action, and the division of power among the branches of government could no longer exist. *Id*. Thus, "[i]f a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *Id*., 126 S.Ct. at 1860-61. *See also State of Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir.1998) ("The warnings against unrestrained exercise of the power of judicial review over the conduct of the executive or congressional branches by relaxation of the standing requirements are numerous and dire.")

To establish Article III standing, a plaintiff invoking the jurisdiction of a federal court bears the burden of showing:

> 1) injury in fact, by which we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury fairly can be traced to the challenged action of the defendant, and has not resulted from

the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative.

*Day v. Bond*, 500 F.3d 1127, 1132 (10th Cir. 2007) (*citing Ne. Fla. Chapter of Assoc. Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 663 (1993)). These three elements of standing are an indispensable part of the plaintiff's case. *Id*.

The Amended Complaint is devoid of any allegations that would show PRN has standing. There is no allegation of any specific injury to PRN – or even to any particular member of PRN – caused by the defendant's actions. Rather, the complaint purports to state claims on behalf of some 1,000 unnamed patients. Even overlooking this fact for the moment, the allegations still show no concrete or particularized injury fairly traceable to the defendants' actions. The complaint alleges that because the defendants' actions caused Dr. Schneider's license to be suspended, the clinic was therefore closed, and an unspecified number of unnamed patients now cannot get treatment from other doctors or they refuse to go to an emergency room because they have been treated rudely in the past. As an initial matter it is virtually impossible to address the merits of such a claim, given its nonspecific nature. General grievances void of any particular set of circumstances do not present a case or controversy "of a judiciary nature." Absent specific facts, the court cannot determine what claim any particular patient might or might not have. Moreover, the Amended Complaint itself undercuts any claim that the alleged injury threatening these patients is fairly traceable to the defendant's conduct. The complaint alleges that the failure of other physicians to prescribe controlled substances to these patients is not due to any fear of revocation of their license by the State or to fear of imminent prosecution under the CSA, but rather because they lack a proper understanding of pain management and "follow the

standard decision-making paradigm of 'differential diagnosis,'" the result of which is that they "refuse to recognize withdrawal and to stabilize those patients by prescribing opioids." Doc. 1, ¶27. Similarly, emergency room physicians "take it upon themselves to make a determination ... as to whether a presenting pain patient is either 'deceptive' or 'dependent' – and then refuse to provide medically vital treatment to the former." ¶26. To show that an injury is fairly traceable to the defendant, the plaintiff must show it is "not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff's allegations fail to meet that requirement.

Even if plaintiff could meet the constitutional standing requirements, it has failed to allege any facts showing it can overcome the self-imposed "prudential limitations" on standing developed by the courts. The Supreme Court has long held that "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, ... the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). There are exceptions to this general rule, but plaintiff has not alleged facts to meet them. To establish "third-party standing," the plaintiff ordinarily must make two showings. First, plaintiff must show it has some particular "close" relationship with the person who possesses the right at issue. *Aid for Women v. Foulston*, 441 F.3d 1101, 1111-12 (10th Cir. 2006). A physician-patient relationship, for example, has been considered sufficiently close to qualify. *Id*. Other fiduciary-type relationships might also qualify, but in any event the third-party plaintiff must be so situated that it can be expected to litigate as fully and effectively as the plaintiff himself. *Id*. Second, the plaintiff must show a hindrance or inability on the part of the third party to pursue his or her own

claims. *Id*. at 1113. There are no allegations here to show why PRN should be allowed to bring claims on behalf of Dr. Schneider's patients. No close relationship is alleged (or any other relationship, for that matter) and no hindrance or obstacle to the bringing of claims by the patients is alleged. Nor is there any allegation that would establish organizational standing.

In sum, the court finds plaintiff PRN has failed to allege facts showing either Article III standing or prudential standing to bring these claims on behalf of patients of Dr. Stephen Schneider. Accordingly, the motion for a temporary restraining order will be denied.

B. *Younger* Abstention. Even if plaintiff could overcome these standing issues, there is another obvious hurdle to the request that this court order the reinstatement of Dr. Schneider's medical license. The Supreme Court has repeatedly cautioned the federal courts against granting equitable relief that unduly interferes with ongoing state proceedings. This so-called "*Younger* abstention doctrine" applies when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies. *See Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006). "Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Id. (citation omitted).*

In *Middlesex County Ethics Committee v. Garden State Bar Ass'n.*, 457 U.S. 423 (1982), the Supreme Court found it appropriate for a federal district court to abstain from interfering with ongoing state bar disciplinary proceedings against a lawyer. The Court noted that where vital state interests are involved, a federal court should abstain unless state law clearly bars the

interposition of the constitutional claims. *Id*. at 432. "So long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Id*. at 435. Numerous courts, including the Tenth Circuit, have applied this principle to state proceedings to suspend a physician's license, and have concluded that abstention is warranted where the physician has an adequate opportunity to raise the federal issues involved – including the claim of the plaintiff here that the suspension was accomplished without due process of law. *See Weitzel v. Div. of Prof. Licensing*, 240 F.3d 871 (10th Cir. 2001); *Amanatullah v. Colorado Bd. of Med. Examiners*, 187 F.3d 1160 (10th Cir. 1999) . As the Tenth Circuit noted, "there is no question that the licensing and discipline of physicians involve[ ] important state interests, matters which traditionally look to state law for their resolution...." *Amanatullah*, 187 F.3d at 1164-65.[4] *See also Suster v. Jefferson-Moore*, 2004 WL 2828948, 118 Fed.Appx. 87 (7th Cir., Nov. 30, 2004); *Doe v. State of Connecticut Dept. of Health Services*, 75 F.3d 81 (2nd Cir. 1996); *Kenneally v. Lungren*, 967 F.2d 329 (9th Cir. 1992); *Bettencourt v. Bd. of Registration In Medicine of Comm. of*

---

[4] *Weitzel* also noted that when a plaintiff claims abstention should not apply because of bad faith on the part of the State, it is the plaintiff's "'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment." *Weitzel*, 240 F.3d at 877. Plaintiff has not alleged any facts here to support its conclusory allegation that the Board's suspension – which plaintiff calls a "knee-jerk reaction to political pressure"– was done in bad faith. The Amended Complaint attempts to argue that the Board's suspension was "absurd" because "there is no danger whatever that Dr. Schneider can practice medicine even with a restored license, but, so long as his license is suspended, patients of the Schneider clinic cannot secure the care they need." Doc. 1, ¶4. The court cannot decipher the logic of this argument. To the extent it argues that physician's assistants at the clinic could resume dispensing controlled substances if Dr. Schneider's license were to be reinstated, it appears to ignore Kansas law requiring that such dispensing occur only under supervision of a licensed physician. *See* K.S.A. §§ 65-28a02 & 65–28a08.

*Massachusetts*, 904 F.2d 772 (1st Cir. 1990).

The law of Kansas specifically authorizes the Kansas Board of Healing Arts to grant a medical license and to temporarily suspend the license of a physician on a summary or emergency basis if necessary. K.S.A. § 65-2838. A doctor whose license has been suspended has the right to request a hearing before the Board and a right to be represented by counsel at a hearing. It also grants the physician a right to judicial review of the Board's ruling in the Kansas district courts. K.S.A. § 65-2851a. The court sees no impediment in state law to a physician raising a due process challenge to the Board's action in the state district courts. There is no allegation here that Dr. Schneider has requested a hearing before the Board or that he has attempted to seek judicial review of the Board's ruling in the state courts. Given the adequate procedures available to Dr. Schneider under state law, this court will not interfere with an ongoing state proceeding before the Board of Healing Arts, nor will this court usurp the authority (and responsibility) of the Board to determine whether a particular person is qualified to practice medicine in the State of Kansas – be it Dr. Schneider, Dr. Sack, or anyone else.

The same principles on standing and abstention previously discussed also warrant denial of plaintiff's claim for injunctive relief against the United States Department of Justice. The complaint contains a number of blanket allegations about the Department and the way it has enforced the Controlled Substances Act – including that it has "embarked on a deadly campaign" and has "terrorized physicians and pain patients though the country." Obviously, the plaintiff disagrees with the Department's efforts and methods of enforcing the law, but these types of allegations – without any reference to any particular set of facts or circumstances – are precisely the type of general grievances that should be made to the Legislature or the Executive

branches of government. They do not demonstrate the existence of a specific case or controversy that a federal court can address through injunctive relief.

To the extent plaintiff is claiming that the Controlled Substances Act is unconstitutional on its face, such a challenge requires the plaintiff to establish that no set of circumstances exists under which the Act would be valid. *See e.g., United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiff has not met its heavy burden of showing facial invalidity, nor is it likely to do so given that the Supreme Court has previously upheld the application of the Act against a physician for prescribing controlled substances outside the usual course of professional medical practice. *See United States v. Moore*, 423 U.S. 122 (1975). To the extent plaintiff is arguing that the CSA is unconstitutional as applied to some particular case, the complaint does not allege any particular case or circumstances showing such an unconstitutional application of the law. If the basis of plaintiff's claim is that application of the CSA to Dr. Schneider's conduct is unconstitutional, then the Pain Relief Network has no standing to assert such a claim. Dr. Schneider has the right in the criminal case to raise any challenge to the law, including a constitutional challenge, on his own behalf. But plaintiff appears to be attempting to forestall prosecution of Dr. Schneider's criminal case by seeking injunctive relief in this action. Of course, if anyone who wanted to halt a criminal prosecution could do so by filing a civil action, the courts would be flooded with such requests. For that reason, it is not surprising that – aside from the question of double jeopardy – federal courts have almost universally refused to grant injunctive relief to halt the prosecution of a federal criminal case. *See Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987).

Plaintiff also asks this court to enjoin the Department of Justice from "harassing" the

Schneider clinic in the future, but plaintiff has alleged no facts to show any threat of imminent unlawful action by the Department. Similarly, plaintiffs asks for an injunction ordering the Department to return all original patient files that it seized from the Schneider clinic, but plaintiff has shown no threat of imminent harm from not having any *original* patient files. Nor has plaintiff shown any entitlement to original documents that may be evidence in an ongoing criminal case.

III. *Motions to Dismiss*.

On March 3, 2008, the State of Kansas filed a motion to dismiss the action based upon plaintiff's lack of standing, *Younger* abstention, and Eleventh Amendment immunity. Later the same day, plaintiff Pain Relief Network filed a motion for voluntary dismissal without prejudice. Plaintiff arguably has the right to dismiss the action without court order by virtue of Fed.R.Civ.P. 41(a)(1)(A)(i), but at any rate, even if the court considers the motion under Rule 41(a)(2), the court will grant the motion due to plaintiff's lack of standing and because of *Younger* abstention.

IV. *Conclusion*.

Plaintiff's Motion for a Temporary Restraining Order (Doc. 3) is DENIED. Pain Relief Network's Motion For Voluntary Dismissal Without Prejudice (Doc. 14) is GRANTED. Defendant State of Kansas and The Kansas State Board of Healing Arts' Motion to Dismiss (Doc. 12) is DENIED as moot. The action is hereby dismissed without prejudice.

IT IS SO ORDERED this 5th Day of March, 2008, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge