```
 1                 IN THE UNITED STATES DISTRICT COURT
                          DISTRICT OF KANSAS
 2

 3  PAIN RELEIF NETWORK,           )
                   Plaintiff,      )
 4                                 )
                                   )
 5  v.                             )Case No. 08-1048
                                   )
 6                                 )
    STATE OF KANSAS,               )
 7  KANSAS STATE BOARD OF HEALING, )
    DEPARTMENT OF JUSTICE,         )
 8  ERIC MELGREN,                  )
    MICHAEL MUKASEY,               )
 9  Defendants,                    )
    _____)
10

11                     TRANSCRIPT OF MOTION

12                     PROCEEDINGS had on the 29th day of

13  February, 2008, in the above-entitled and numbered cause

14  before the HONORABLE WESLEY BROWN, United States District

15  Judge for the District of Kansas, sitting in Wichita.

16

17                        APPEARANCES

18         The Plaintiff, Pain Relief Network, appeared by
    and through Mr. Uzo Ohaebosim and Mr. Phillip P. Chandler.
19
           The Defendant, State of Kansas, appeared by and
20  through Mr. Mike Leitch.

21         The Defendant, Kansas State Board of Healing,
    appeared by and through Mr. Mark Stafford.
22
           The Defendant, Department of Justice, appeared by
23  and through Ms. Emily Metzger.

24         The Defendant, Eric Melgren, appeared by and
    through Ms. Laurie k. Kahrs.
25
```

1          THE COURT:  Call your case, Mr. Clerk.

2          THE CLERK:  In the United States District

3    Court for the District of Kansas, this is Civil Case

4    08-1048, Pain Relief Network versus defendants;

5    State of Kansas, Kansas State Board of Healing,

6    Department of Justice, Eric Melgren, and Michael

7    Mukasey.  Today is February 29th, 2008.  The case

8    comes on today for a motion hearing.

9          THE COURT:  Mr. Ohaebosim, are you

10   prepared to proceed on behalf of the plaintiff?

11          MR. OHAEBOSIM:  We are, Your Honor,

12   myself and co-counsel, Phillip Chandler.

13          THE COURT:  Good morning, Mr. Chandler.

14          MR. CHANDLER:  Thank you.

15          THE COURT:  And Mr. Leitch, Ms. Kahrs,

16   and Ms. Metzger, are you ready to proceed?

17          MS. METZGER:  Yes, Your Honor.

18          MS. KAHRS:  Yes, Your Honor.

19          MR. LEITCH:  Yes, Your Honor.

20          THE COURT:  This action was filed by the

21   Pain Relief Network, or the PRN as they sometimes

22   call themselves, which according to the complaint is

23   a nonprofit corporation based in New York.  The

24   complaint alleges that the PRN is concerned with the

25   application of the Controlled Substance Act to the

1        practice of pain medicine.

2               The complaint, which has been amended,

3        alleges that PRN seeks relief on behalf of patients

4        of Dr. Stephen J. Snider.

5               The plaintiff has now filed a motion for

6        emergency injunctive relief.

7               The Court is in receipt of the briefs,

8        and this is a legal matter at this point.

9               The Government of the State of Kansas and

10       the United States Government have answered, and the

11       Court called this meeting in connection with the

12       seeking of a TRO, or temporary restraining order,

13       which I will comment on at the end of the proceeds

14       in this matter.

15               In reviewing the pleadings and the briefs

16       that have gone with them, I think that most of the

17       issues which are before me have been covered.

18        If any of you have additional arguments as to

19       the law in this matter that you have not covered in

20       your briefs, I want to know first why you haven't

21       covered them.

22        Second, if you want to make an argument about

23       them, I'll be glad to hear from you for 10 minutes.

24       I'd give you longer, except you've covered

25       everything I can think of that needed covered

1    anyway.

2        That's true of the Government -- Governments,

3    the United States and the State of Kansas.

4        If you do not have anything I'll go ahead

5    with my comments which will pretty much dispose of

6    the matters before us today.  But I do want you to

7    have a chance to be heard if you feel it is

8    necessary from a legal standpoint to give me any

9    further information upon which to make my judgment.

10        Does the plaintiff have anymore statements

11    they wish to make, Mr. Ohaebosim?

12            MR. OHAEBOSIM:  Yes, Your Honor, the only

13    thing we wish to add would relate to the response

14    made by the Government concerning immunity.

15            THE COURT:  Will you please approach the

16    podium so I can hear you better?

17            MR. OHAEBOSIM:  I apologize, Your Honor.

18    The only thing we wish to add would be to respond to

19    the response by the Government concerning immunity

20    and standing.

21        Mr. Chandler will make that argument.

22            THE COURT:  Mr. Chandler, please

23    proceed.  But don't repeat yourself, if you can.

24            MR. CHANDLER:  I'll do my best.  Thank

25    you.

```
1              First of all, I just want to thank the Court
2         for scheduling this on an emergency basis.
3              As to standing, we would submit that we have
4         organizational standing.
5                  THE COURT:  Will you keep your voice up?
6                  MR. CHANDLER:  Yes.  I will submit we
7         have organizational standing.  We meet all of the
8         three criteria which, actually, the Government very
9         kindly had in its brief, the USDOJ.
10             The plaintiffs have suffered an injury in
11        fact, an invasion which is concrete and
12        particularized and actually imminent and not
13        conjectical or hypothetical.
14             Your Honor has seen the affidavits from
15        patients who have testified, asserted they have
16        actual injuries.
17             Now, the second one; there is a causal
18        connection between the injury and the chronic
19        condition complained of --
20                 THE COURT:  This is a repetition of
21        everything you said in your brief.
22                 MR. CHANDLER:  I don't believe I've
23        addressed standings.  I'm just trying to --
24                 THE COURT:  You not only addressed them,
25        you addressed them very carefully.  Go ahead.
```

1          MR. CHANDLER:  I don't want to take more
2     time then necessary.
3          THE COURT:  I want you to do what you
4     think you need to do.
5          MR. CHANDLER:  Let me just state this
6     then.  It is clear that we satisfy all three
7     criteria for organizational standing and nothing
8     that appears in either of the briefs in response has
9     undermined that.  So I think I'll just leave it at
10    that then.
11         THE COURT:  You're an organization, not a
12    corporation, what your authorized charter says,
13    that's a part of your pleadings, but if you have --
14    I only say this is not -- this is purely a legal
15    matter --
16         MR. CHANDLER:  Yes, I agree.
17         THE COURT:  -- that we have here.  It has
18    legal repercussions which could be extensive,
19    because of the nature of these actions, from a legal
20    standpoint not for any other.  Do you understand?
21         MR. CHANDLER:  Yes, sir.
22         THE COURT:  Does the Government have
23    anything they wish to say?  The United States?
24         MS. METZGER:  No, Your Honor.  We'll rest
25    on our briefs.

1    MR. LEITCH:  We'll rest on our briefs as

2    well, Your Honor.

3    THE COURT:  All right.  Well, the first

4    issue which I will address, and one which we always

5    have to address first, after I have summarized the

6    compliant, is whether Pain Relief Network has a

7    legal standing to bring an action on behalf of

8    Dr. Snider's patients.

9    The defendants named in this complaint are

10   the State of Kansas, the Kansas Board of Healing

11   Arts, the United States Department of Justice, and

12   the Attorney General of the United States, and the

13   United States Attorney for the District,

14   Mr. Melgren, both in their official capacities.

15   The complaint alleges that PRN tried

16   unsuccessfully to get a temporary restraining order

17   from the state court in an effort to keep the Kansas

18   Board of Healing Arts from suspending Dr. Snider's

19   medical license.

20   It alleges that an administrative law judge

21   suspended Dr. Snider's license without due process

22   of law.  Although the complaint does not specify how

23   the doctor was deprived of due process, nor does the

24   complaint address whether the doctor attempted to

25   appeal the board's ruling to the state courts.

1          The complaint alleges that due to the

2     suspension of Dr. Snider's license the Snider Clinic

3     was closed and the patients of Dr. Snider are now

4     unable to secure appropriate treatment for their

5     pain anywhere in Kansas.

6          The complaint claims that the Controlled

7     Substance Act is fatally arbitrary in that it

8     violates the rights of plaintiff members of due

9     process and equal protection under the Fifth and

10    Fourteenth Amendments.

11         It says the Controlled Substance Act violated

12    their right to be free from cruel and unusual

13    punishment under the Eighth and Fourteenth

14    Amendments; that it violates plaintiff's rights

15    under the Tenth Amendment; that it violates the

16    Americans with Disabilities Act; and that the

17    federal criminal law preventing health care fraud is

18    unconstitutional because it impermissibly allows

19    federal government intrusion into the physician-

20    patient relationship.

21         The complaint alleges that all of this was in

22    violation of plaintiff members' rights, although the

23    complaint is unclear as to whether this refers to

24    members of the Pain Relief Network or to

25    Dr. Snider's patients.

1      The plaintiff asks the Court to grant a
2   laundry list of relief beginning with a general
3   declaratory judgement that quality care in the form
4   of FDA approved pharmaceuticals is a fundamental
5   right of patients in severe pain.
6      The compliant also asks the Court to order
7   defendant, Board of Healing Arts, to reinstate
8   Dr. Snider's medical license; to order the board to
9   affirm that it has no objection to Dr. Joseph M.
10  Sack taking over the clinic; to appoint a special
11  master to oversee the clinic's finances; to enjoin
12  the United States Department of Justice from
13  harassing the clinic or from confiscating patient
14  files; and to order the Department of Justice to
15  return all original patient files that were taken
16  from the clinic.
17      The amended complaint also asks the Court to
18  enjoin the Department of Justice from enforcing the
19  Controlled Substance Act throughout the State of
20  Kansas against any professional licensed by the
21  Board of Healing Arts.
22      Given what appears to the Court to be a
23  rather substantial object, the plaintiff's request
24  for injunction, the Court set this matter for
25  hearing to give the United States and State of

1        Kansas the opportunity to be heard.

2              They have been heard.

3              I've seen the briefs filed by the State of

4        Kansas and the United States both which argue that

5        the plaintiffs lack standing to bring an action on

6        behalf of Dr. Snider's patients, and that the Court

7        should deny the injunction under the Young

8        Abstention Doctrine.

9              That's the case which has been in effect a

10       long time.  That actually tells the Federal Court to

11       keep their hands off of state business unless they

12       are have a reason.

13             This brings me up to the question of whether

14       the Pain Relief Network has any standing to bring

15       this action.

16             The question of standing involves whether a

17       litigant who brought the action is entitled to have

18       a court decide the merits of the dispute.

19             The constitution only gives the Federal

20       Courts the power to decide specific cases and

21       controversy not to make general proclamations of

22       law.  This means the courts can only redress an

23       injury to the complaining party regardless of

24       whether someone else might benefit from a judgment.

25             This requires the party invoking the Court's

1    authority to show that he, personally, has or may

2    suffer a specific injury that is fairly traceable to

3    the defendant's conduct.

4         According to the Supreme Court this

5    requirement is necessary to prevent courts from

6    overstepping their bounds and from becoming forums

7    for public policy questions that are better

8    addressed to the legislature and the executive

9    branch.

10        As a result the Supreme Court has said that

11   the plaintiff must assert his own legal rights of

12   interest and cannot rest his claim to relief on the

13   legal rights or interests of third parties, and

14   that's the Warth v. Seldin case, a 1975 US case.

15        There are certain exceptions to this rule.

16   The plaintiff has not alleged any facts to show it

17   meets any of these exceptions.

18        The plaintiff has not alleged any facts

19   showing a special relationship with Dr. Snider's

20   patients nor has it shown that these patients are

21   unable to bring an action on their own behalf.

22        Judging from the complaint, the plaintiff

23   seems to be unaware of this fundamental legal

24   principle.

25        There is no allegation to show that PRN has

1    any legal standing to bring a claim on behalf of

2    Dr. Snider's patients.

3        There's no application or attempt to make

4    this a class action on behalf of those persons,

5    where the Court will determine whether the head of

6    the class action would compliment the position.

7        The complaints in the motion are based

8    entirely on the rights and interests of Dr. Snider's

9    patients of whom there are some ten thousand, but

10   who are not parties to this action.

11       The plaintiff's motion alleges that these

12   patients will suffer imminent harm unless the Court

13   grants them relief, but none of the patients are

14   parties of the action, and the Court has no

15   jurisdiction to address any claims that these

16   patients might or might not have.

17       Moreover, the plaintiffs allege in a blanket

18   proposition that these patients are suffering harm

19   because other doctors in the community will not

20   treat them.

21       Aside from the speculation and conjecture,

22   however, nothing in the complaint shows that any

23   particular treatment decision by any other doctor

24   has been caused by the conduct of the State of

25   Kansas or the Department of Justice.

1        The next issue before me is abstention.  Even
2    if the plaintiff could show standing to bring a
3    claim, there's another obvious hurdle to any request
4    for injunctive relief concerning Dr. Snider's
5    license to practice medicine.
6        The Supreme Court of the United States has
7    repeatedly cautioned federal courts against
8    interfering with the ongoing state proceedings.
9        Under the Younger Abstention Doctrine, the
10   federal court must abstain from exercising
11   jurisdiction when, one, there is an ongoing civil or
12   administrative proceeding in the state; the state
13   court provides an adequate forum to hear the claims,
14   and the state proceedings involve important state
15   interest.
16       In 1982 the Supreme Court held that the
17   federal court should not interfere with state
18   proceedings against a lawyer where the lawyer has
19   the right to seek judicial review in the state
20   courts.  I cited the case, in 1982.
21       Since then numerous federal courts have
22   refused to interfere with state proceedings
23   involving the suspension of a doctor's license.
24       In 1999 the Tenth Circuit Court of Appeals,
25   that's our circuit, affirmed the federal court's

Kayla Watson, CSR

1    refusal to grant injunctive relief in a proceeding

2    involving the suspension of a doctor's license in

3    Colorado, that's the Colorado Board of Medical

4    Examiners case, and the Tenth Circuit made a similar

5    ruling in a case in Utah in 2001, Weitzel versus the

6    Division of Professional Licensing.

7        In doing so the Court noted that the

8    licensing of doctors involved important state

9    interest.  It also noted that since the founding of

10   this country the granting of licenses to practice

11   medicine has been handled by the state, under state

12   law.

13       The law of Kansas, specifically authorizes

14   the State Board of Healing Arts to grant a medical

15   license, and it authorizes the board to temporarily

16   suspend the license of a physician, including on

17   emergency basis if necessary, that's Kansas statute

18   65-28.30

19       A doctor whose license is suspended has a

20   right to request a hearing before the Board, a right

21   to be represented by counsel at the hearing, and the

22   right to seek judicial review of the Board's ruling

23   in the state courts of Kansas.  That's the statute

24   of 65-28.51(a).

25       Given the procedures available to Dr. Snider

1    under state law, or to any other physician, this

2    court will not interfere with an ongoing state

3    proceeding before the Board of Healing Arts, nor

4    will this Court usurp the authority of the Board to

5    determine whether or not a particular person is

6    qualified to practice medicine in the State of

7    Kansas whether it be Dr. Snider, Dr. Sacks, or

8    anybody else.

9         The injunction against the Federal

10   Government:  Plaintiff's request for an injunction

11   against the United States Department of Justice

12   fairs no better.

13        The compliant makes a number of blanket

14   allegations against the Department of Justice and

15   the way it has enforced the Controlled Substance

16   Act, including the allegations the Department has

17   embarked upon a deadly campaign or has terrorized

18   physicians of pain viciously through the campaign.

19        Obviously, the plaintiff disagrees with the

20   Department's efforts to enforce the law, but these

21   types of allegations without any reference to any

22   facts or circumstances are the types of policy

23   complaints that should be made to the legislature or

24   the executive branch.

25        They do not demonstrate a specific case or

Kayla Watson, CSR

1       controversy the federal courts can address through
2       injunctive relief.  And, incidentally, those issues
3       have been raised on a specific basis before this
4       Court.
5            To the extent the plaintiff is claiming the
6       Federal Controlled Substance Act is unconstitutional
7       on its face because it allegedly interferes with the
8       relationship between doctor and patient; the
9       plaintiff making such a challenge must show that
10      there are no circumstances under which the act could
11      lawfully be applied.
12           It is highly doubtful plaintiffs could meet
13      that burden.  Specifically since the United States
14      Supreme Court has previously upheld the application
15      of the Act against physicians prescribing controlled
16      substances outside the course of usual medical
17      practice.  That's United States versus Moore.
18           Plaintiff has made no showing that the Act is
19      unconstitutional on its face.
20           To the extent that the plaintiff is arguing
21      that the Controlled Substance Act is
22      unconstitutionally applied to some particular case,
23      the compliant does not allege any particular case or
24      any circumstance showing the application of law to
25      be unconstitutional.

1        If the basis of plaintiff's claim is that the

2    act was unconstitutionally applied to Dr. Snider's

3    conduct, which is the subject of a criminal case

4    brought by the Government, then the Court finds that

5    the Pain Relief Network has no standing to challenge

6    the criminal indictment against Dr. Snider.

7        Dr. Snider can make any such agreement on his

8    own behalf in a criminal proceeding.  He has an

9    adequate remedy under the law to challenge the law

10   as it may apply to him.

11       It appears to the Court plaintiff is seeking

12   an injunction as a way of challenging the ongoing

13   criminal case against Dr. Snider.

14       Obviously, if anyone wanted to prevent a

15   criminal prosecution and could do so by filing a

16   civil suit, there would be a flood of civil suits

17   asking the Court to halt prosecution.

18       For that reason it is not surprising that the

19   federal courts have almost universally refused to

20   grant injunctive relief to halt the prosecution of a

21   federal criminal case.

22       Any challenge to the indictment or to the

23   criminal charges against Dr. Snider can be asserted

24   by him in a criminal proceeding in accordance with

25   the rules that govern criminal cases.

1           Plaintiff has also asked this Court to enjoin

2       the Department of Justice from harassing

3       Dr. Snider's Clinic, but plaintiff has alleged no

4       facts to show any threat of imminent unlawful action

5       by the Department.

6           Finally, plaintiff asks the Court to order

7       the Department of Justice to return all original

8       patient files it has seized from the clinic.

9           Plaintiff has not shown any threat of

10      imminent harm of not having any original patient

11      files, nor has plaintiff shown any entitlement to

12      original files that may be evidence in an ongoing

13      criminal case.

14          We come now to the use of the temporary

15      injunction as a means to bring this matter to a

16      conclusion on behalf of plaintiff's contentions.

17          Even if plaintiff could get by the fact

18      hurdles, the facts to date do not warrant an

19      injunction.

20          In the Tenth Circuit a temporary restraining

21      order or a preliminary injunction is considered an

22      extraordinary remedy and it requires the parties

23      seeking it to show the following matters:  One, a

24      substantial likelihood of success on the merits;

25      irreparable harm to the movant if the injunction is

1    denied; the threat of injury, that the threatened

2    injury outweighs the harm that the preliminary

3    injunction may cause the opposing party; and, four,

4    the injunction issued will not adversely affect the

5    public interest.

6         It is apparent to the Court that the

7    plaintiff has not established a likelihood of

8    success on the merits.  In fact, some of plaintiff's

9    complaints are legally frivolous.

10        As for the harm that will allegedly result

11   without an injunction, plaintiff claims that some

12   unspecified patients are dying from want of

13   medication.  But the complaint also alleges that

14   most of Dr. Snider's patients will not go to the

15   emergency room.

16        If a particular patient needs emergency care,

17   medical care, they can go to an emergency room, not

18   seek an injunction with the Court.

19        The plaintiff has also failed to establish

20   that granting the injunction will be in the public

21   interest.

22        The question of whether a particular

23   physician should be licensed to practice medicine in

24   the state is best determined by the State of Kansas

25   without interference from this Court.

1           As for the Controlled Substance Act, congress

2       has given the responsibility for enforcing that act

3       to the Department of Justice, and the Court will not

4       prevent it from performing its duty by issuing a

5       general injunction.

6           The Court is not going to interfere with the

7       State of Kansas in its consideration for medical

8       licenses, nor is it going to prevent the Department

9       of Justice from fulfilling its obligation to see

10      that the laws are faithfully executed.

11          Accordingly, the plaintiff's motion for

12      temporary restraining order is denied.

13          That's the judgment of the Court.

14          Court will be in recess subject to call.

15

16

17

18

19

20

21

22

23

24

25

```
1                        CERTIFICATE

2

3            I, Kayla Watson, CSR in and for the District

4  of Kansas, do hereby certify:

5              That the above and foregoing proceedings were

6  taken by me at said time and place in stenotype;

7              That thereafter said proceedings were

8  transcribed by me and/or under my direction and

9  supervision by means of computer-aided transcription, and

10 that the above and foregoing constitutes a full, true and

11 correct transcript of said proceedings;

12             That I am a disinterested person to the said

13 action.

14             IN WITNESS WHEREOF, I hereto set my hand on

15 this the 26th day of March, 2008.

16

17

18                       s:/ Kayla Watson
                              Kayla Watson
19                                 CSR

20

21

22

23

24

25
```

Kayla Watson, CSR